UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

M J COURTYARD LLC ET AL                 CASE NO.  6:24-CV-01385

VERSUS                                  JUDGE ROBERT R. SUMMERHAYS

STATE FARM FIRE & CASUALTY CO           MAGISTRATE JUDGE DAVID J. AYO

## MEMORANDUM RULING

The present matter before the Court is State Farm Fire and Casualty Company's Motion for Summary Judgment [ECF No. 22]. Plaintiffs, MJ Courtyard LLC ("Courtyard"), Maurice Brown, and Travis Carrier and Candace Carrier (collectively "Plaintiffs") oppose the Motion and State Farm Fire and Casualty Company ("State Farm") has filed a reply.

State Farm seeks dismissal of the Plaintiffs' claim for bad faith damages pursuant to La. R.S. 22:1892 and 22:1973 as well as the claims of the three individual members of the LLC for mental anguish damages. Plaintiffs concede in their response that the claim for mental anguish should be dismissed. As such, the sole issue for purposes of this Motion is State Farm's challenge to Plaintiffs' claim for bad faith damages.

## I.
### FACTUAL BACKGROUND

This dispute arises out of alleged delays in the payment of a property damage claim. On May 25, 2024, a fire caused damage to a restaurant owned by Plaintiffs at 123 South 2nd Street in Eunice, Louisiana.[1] The fire damaged the building, its contents and equipment.[2]   State Farm insured the restaurant under State Farm Businessowners Commercial Policy 980B9-B-846-7.[3]

---

[1] ECF No. 1, p. 3¶ 11-12.
[2] ECF No. 1, p. 3, ¶12.
[3] ECF No. 22, Exhibit A.

1

Plaintiffs reported the loss to State Farm on May 26, 2024.[4] The State Fire Marshal's office opened an investigation as to the cause of the fire on May 25, 2024.[5] State Farm claim representative Stephen Laughlin inspected the fire loss on May 30, 2024 with State Fire Marshal investigator Jessie Charpentier, restaurant owners Maurice Brown and Candace Carrier, and the State Farm independent contractor insurance agent.[6] On July 18, 2024, State Farm sent Maurice Brown and Travis and Candace Carrier a reservation of rights letter. The letter stated that State Farm questioned whether the cause and origin of the restaurant fire occurring on May 25, 2024, was accidental or if any insured was involved with setting the fire or having the fire set on their behalf.[7]

State Farm has paid policy limits for the following: Coverage A on the building; Coverage B for business personal property; debris removal; and the "Inland Marine Computer Property" endorsement.[8] State Farm issued a payment in the amount of $119,420 on September 20, 2024 for business personal property and a payment in the amount of $3,834.44 for Inland Marine Computer Property to Plaintiffs.[9] On October 4, 2024, State Farm issued a payment in the amount of $139,955.86 to Plaintiff MJ Courtyard and counsel for loss of income through December 31, 2024.[10] On October 24, 2024, State Farm claim representative Garret Gaubert met with Mr. and Mrs. Carrier, Mr. Brown, State Farm independent contractor agent Scotty Doucet, and a representative of JD Bank at JD Bank to deliver State Farm's $1,647,999 payment, the State Farm policy limits under Coverage A for damage to the building.[11] State Farm issued a payment to Plaintiffs on November 21, 2024 under the Inland Marine Computer Form Endorsement in the

---

[4] ECF No. 22, Exhibit A.
[5] ECF No. 22, Exhibit C.
[6] ECF No. 22, Exhibit A.
[7] *Id.*
[8] ECF No. 22, Exhibit B Summary of Loss.
[9] ECF No. 22, Exhibit A and Exhibit B
[10] *Id.*
[11] *Id.*

amount of $21,165.56, the remainder of the $25,000 policy limits.[12] Plaintiffs' counsel received the check and mailed it to the Carriers who never received the check.[13] State Farm reissued the check on December 23, 2024.[14]  On April 5, 2025, State Farm issued payment in the amount of $10,000, the debris removal limit under the policy as well as a payment in the amount of $1,033.63 for bar equipment leased by Coca-Cola to the restaurant per an invoice submitted by Coca-Cola to State Farm directly on March 10, 2025.[15]

Plaintiffs' claim for bad faith damages is grounded on their argument that, despite an initial "advance" of $5,000, the remaining $1,948,408.49 in payments were not made until September 20, 2024, approximately 118 days after the loss. State Farm alleges that the delay was permitted based upon an open arson investigation.

## II.
### THE SUMMARY JUDGMENT STANDARD AND EVIDENCE TO BE CONSIDERED

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[16] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[18] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] Fed. R. Civ. P. 56(a).
[17] *Id.*
[18] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).

absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[19]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[20] "Credibility determinations are not part of the summary judgment analysis."[21] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[22] Under Rule 56(f), a court may "[a]fter giving notice and a reasonable time to respond … (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

Plaintiffs assert that certain evidence submitted by State Farm should not be considered by the Court in State Farm's Motion. First, Plaintiffs argue that the Declaration of Garrett Gaubert, attached to State Farm's Motion as Exhibit A, should be excluded because two of the paragraphs in the Declaration contain hearsay. Under Rule 56(c)(4) of the Federal Rules of Civil Procedure, "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Paragraphs 13 and 18 of Mr. Gaubert's

---

[19] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[20] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[21] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[22] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

4

Declaration include conversations between other State Farm employees and it is unclear whether Mr. Gaubert had first-hand knowledge of the information contained in those paragraphs. The Court will therefore not consider those paragraphs of the Declaration. The Court need not, however, disregard the Declaration in its entirety.

Next, Plaintiff claims that Exhibit C to State Farm's Motion, the State Fire Marshal's Report should be excluded because it is not a declaration. The Court disagrees. The first page of the exhibit is a certification by a Deputy Assistant Secretary of the Louisiana State Fire Marshal's office. These documents are admissible under Federal Rule of Evidence 803(8) as an exception to the hearsay rule as the record of a public office and also under Federal Rule of Evidence 803(6) as records of a regularly conducted activity. Plaintiffs have not shown pursuant to Federal Rule of Evidence 803(6)(E) or 803(8)(B) that the source of information or other circumstances indicate a lack of trustworthiness. The Court finds that Exhibit C is admissible.

### III.
### LAW AND ANALYSIS

Plaintiffs' claim for "bad faith" penalties and attorney's fees is based on two statutes containing similar terms. La. R. S. 22:1892 requires insurers to pay undisputed amounts owed to their insured within the 30 days of the insured presenting satisfactory proof of a loss covered by the insurance policy. La. R.S. 22:1973 establishes the same obligation to pay within 60 days proof of loss. For an insured to prevail on claims for statutory penalties, the insured must prove: (1) the insured presented satisfactory proof of loss, (2) the insurer did not timely pay the loss proven and (3) the insurer's conduct is "arbitrary, capricious or without probable cause."[23]

---

[23] La. R.S. 22:1892.

A satisfactory proof of a covered loss, standing alone, is not sufficient to prove a bad faith claim. Instead, an insured must also prove that the insurer's decision not to pay, or the insurer's untimely payment is "arbitrary, capricious or without probable cause."[24] This "arbitrary or capricious" standard presents a high bar for a plaintiff. The Louisiana Supreme Court has held that bad faith statutes are penal in nature and must, therefore, be strictly construed,[25] and consistent with this principal, "bad faith should not be inferred from an insurer's failure to pay within the statutory time limits."[26] The terms "arbitrary" and "capricious" are synonymous with "vexatious, and a vexatious refusal to pay means unjustified, without reasonable or probable cause or excuse."[27] The Louisiana Supreme Court and the Fifth Circuit Court of Appeals have both held that where there are "substantial, reasonable and legitimate questions as to the extent of an insurer's liability of an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious, or without probable cause."[28]  Further, where the claim presents reasonable and legitimate questions as to the extent and causation of a claim, the insurer likewise has not acted in a "vexatious" manner by declining to pay or paying untimely.[29] The examination of whether an insurer is "arbitrary or capricious" depends on the "facts known at the time of its action…."[30]

La. R.S. 22:1892 (B) (2) provides a suspension of the time periods in which an insurer must make a payment and for bad faith penalties when the loss is fire-related and the state fire marshal has the loss under active arson investigation. It provides, in relevant part, as follows:

> La. R.S. 22:1892 Payment and adjustment of claims; policies other than life and health and accident; good faith duty; breach of good faith duty; vehicle damage

---

[24] La. R.S. 22:1892 (B) (1); *First United Pentecostal Church v. Church Mutual Ins. Co*, 2024 WL 451120, 119 F. 4th 419 (5th Cir. 2024).

[25] *Baack v. McIntosh*, 333 So. 2d 1206, 1217 (La. 2021).

[26] *Reed v. State Farm Auto Ins. Co.*, 857 So. 2nd 1012, 1021 (La. 2003).

[27] *Louisiana Bag Co. Inc. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1114 (La. 2008).

[28] *First United Pentecostal Church v. Church Mutual Ins. Co.*, 119 F. 4th at 428, (quoting *Louisiana Bag Co., Inc.*).

[29] *Id.* citing to *Reed v. State Farm*, 857 So. 2d at 1021.

[30] *Id.* at p. 6 (quoting *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 759 F. 3d 427, 436 (5th Cir. 2014).

6

claims' extension of time to respond to claims during emergency or disaster; penalties; arson-related claims suspension; definitions

* * *

B. (1) (a) Except as provided in Subparagraph (b) of this Paragraph, failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs A (1) and (4) of this Section respectively, or failure to make such payment within thirty days after written agreement of settlement as provided in Paragraph (A) (2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs.

* * *

(2) The period set herein for payment of losses resulting from fire and the penalty payment within the period shall not apply where the loss from fire was arson related and the state fire marshal or other state or local investigative bodies have the loss under active arson investigation. The provisions related to time of payment and penalties shall commence to run upon certification of the investigating authority that there is no evidence of arson or that there is insufficient evidence to warrant further proceedings.

La. R.S. 22:1892 (B)(2) "[g]ives insurance companies a grace period to withhold payment on an insurance policy when an active investigation is ongoing."[31] Even prior to the enactment of Section 22:1892(B)(2) in 1986, the Louisiana Supreme Court had recognized in *Headrick v. Pennsylvania Millers Mutual Insurance Company*,[32] that the presence of an ongoing investigation into arson by the local authorities precludes the assessment of statutory penalties and attorney's fees against an

---

[31] *Sanderson v. Shelter Mutal Ins. Co.*, No. 15-1793, 2015 WL 7162511 at *2 (W.D. La. Nov. 13, 2015).
[32] 257 La. 1101, 245 So.2d 324 (La.1971).

7

insurer.[33]  Accordingly, the existence of an ongoing arson investigation generally provides a reasonable basis upon which an insurer may decline to make payment to the insured.[34]

While La. R.S. 22:1973 does not specifically have an arson-related claims suspension like La. R.S. 22:1892, the Louisiana Supreme Court in *Reed v. State Farm Mut. Auto Ins.*,[35] noted that an insurer's duty to pay under Section 22:1973 and Section 22:1892 is "[v]irtually identical." Accordingly, "[g]iven that the insurer's duty under the same two sections is thus essentially the same, there is little reason to believe that if there is an ongoing arson investigation by the local authorities, an insurer's refusal to pay on the one hand, cannot be held arbitrary and capricious under Section 22:1892, but can, on the other hand, be held arbitrary and capricious under Section 22:1973."[36] The Court in *Dennis* reasoned that "such a conclusion goes against 'the longstanding presump[tion] that it is the intention of the legislative branch to achieve a consistent body of law,'"[37] ruling that "[w]here two statutes deal with the same subject matter, they should be harmonized if possible."[38]

Plaintiffs argue State Farm has not established an ongoing arson investigation at the restaurant because the fire marshal's records do not use the term "active arson investigation" and there are no depositions or affidavits from anyone with knowledge of the state fire marshal's records. The Court disagrees.

The summary judgment record includes evidence that the state fire marshal was actively investigating the cause of the fire to determine whether it was accidental or *intentional*—not whether the fire was electrical, an act of God, or that it resulted from some other unintentional act.

---

[33] *Id.* at 327
[34] *Dennis v. Allstate Ins. Co.*, 10-975, 2011 WL 879508 (E. D. La. Mar. 10, 2011) (Footnote 6 omitted).
[35] 857 So. 2d 1012, 1020 (La. 2003)
[36] *Dennis v. Allstate*, 2011 WL 870508 at *3.
[37] *Stogner v. Stogner*, 739 So. 2d 762, 766 (La. 1990).
[38] *Dennis*, 2011 WL 870508 at *3 (citing to *LeBreton v. Rabito*, 714 So. 2d 126, 129 (La. 1998).

8

Specifically, the summary judgment record shows that the state fire marshal was investigating "suspects" and financial motivations of the owners. The state fire marshal's records showing the history and status of the investigation show that the fire was under investigation from May 25, 2024 to November 6, 2024.[39] The investigation was reopened on January 14, 2025 and closed again on May 5, 2025.[40] The report by Officer Jessie Charpentier sets forth a timeline of events the day of the fire and summaries of his in person interviews.[41] On May 28, 2024, the City of Eunice fire marshal called investigator Charpentier to relate that there were several claims that the owners had been struggling financially.[42] On July 26, 2024, investigator Charpentier compiled and reviewed video footage and observed "an additional potential suspect" who Charpentier was attempting to identify and question.[43]

Moreover on March 14, 2025, the fire marshal sent a letter to State Farm requesting information on the claim that was filed. This letter requested information relevant to an insurer's obligations under La. R.S. 40:1568.2.[44] Specifically, this statute addresses an insurance company's obligations to cooperate with the fire marshal in "the course of an examination of a fire of suspicious origin."

In sum, Plaintiffs simply have not come forward with competent summary judgment evidence to refute the evidence of an ongoing arson investigation. The Court accordingly finds, as a matter of law, that there was an active arson investigation of the fire at Plaintiffs' restaurant. As such, the calculation of the time period relevant to a claim for bad faith damages is suspended and "shall commence to run upon certification of the investigating authority that there is no evidence

---

[39] ECF No. 22-6, Fire Marshal Investigation Status History p. 9, #255.
[40] Id.
[41] Id., Narrative Report at p. 16-17, #262-#263.
[42] Id., at p. 16, #262.
[43] Id., at p. 17, #263.
[44] ECF No. 27, Exhibit 1, March 14, 2025 letter to State Farm from State Fire Marshal.

of arson or that there is insufficient evidence to warrant further proceedings."[45] According to the investigative report of the State Fire Marshal, a determination was ultimately made on May 5, 2025 to close the case as insufficient evidence was found to determine the cause of the fire.[46] As all payments due under the insurance contract were made before that time, there is no basis for Plaintiffs' claim for bad faith damages under either La. R.S. 22:1892 or 22:1973.

For the foregoing reasons, State Farm Fire and Casualty Company's Motion for Summary Judgment [ECF No. 22] is GRANTED. All remaining claims of Plaintiffs are DISMISSED. A separate judgment in conformity with the foregoing reasons has been entered into the record.

THUS DONE in Chambers on this 15th day of May, 2026.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[45] La. R.S. 22:1892 (B)(2).
[46] ECF No. 22-6, Fire Marshal Investigation Status History p. 9, #255.

10